IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

**DONTA T. VAUGHN,**

      **Plaintiff,**

v.                                            Civil action no. 5:07cv17
                                                     (Judge Stamp)

**MARTIN GARZA, Correctional Officer;**
**C/O TOMPKINS, Correctional Officer;**
**C/O TURNER, Correctional Officer,**
**C/O MASSEY, Correctional Officer;**
**C/O Kulh, Correctional Officer;**
**Capt. ARNOLD, Chief Correctional Supervisor;**
**C/O McClung, Housing Unit Officer;**
**J.D. HILL, Associate Warden for Administration;**
**WENDT, Warden, FCI Gilmer;**
**LIEUTENANT CREGAN, Special Investigative Supervisor;**
**LIEUTENANT PAGE, Correctional Supervisor;**
**D. HEADY, Unit Manager,**

      **Defendants.**

## REPORT AND RECOMMENDATION

### I. Procedural History

On December 1, 2006, the Court received a letter from the plaintiff in which he appeared to be asking for legal advise on how to file an action under the Federal Tort Claim Act ("FTCA"). Thereafter, the plaintiff sent a letter, dated December 17, 2006, indicating that his original letter and filing fee sent separately by a relative was intended as a motion for an extension of time within which to file his FTCA complaint. A money order for $200.00 was received by the Clerk's office on December 29, 2006. Accordingly, an Order was entered on January 30, 2007, directing the Clerk to

1

initiate a civil action on the plaintiff's behalf, using his letter received on December 1, 2006, as a Motion for an Extension of Time. The plaintiff was given sixty (60) days from entry of the order to file an appropriate complaint pursuant to the Federal Rules of Civil Procedure. In addition, the Clerk's office was directed to deposit the money order as partial payment of the required $350.00 filing fee and provide the plaintiff with the necessary forms to request leave to proceed without prepayment of fees. On March 30, 2007, the plaintiff filed a request for an extension of time in which to file his complaint. That motion was granted. On April 3, 2007, the plaintiff filed a complaint alleging civil rights violations rather than pursuing a FTCA. On May 10, 2007, the plaintiff was granted leave to amend his complaint to add an additional defendant. On April 2, 2008, after an initial screening, the undersigned found that summary dismissal was not appropriate at that time. Therefore, the Clerk was directed to issue a sixty (60) day summons for each defendant.

On October 31, 2008, the defendants filed a Motion to Dismiss or, in the alternative, for Summary Judgment. On November 3, 2008, the plaintiff was issued a Roseboro Notice. As of the date of this Report and Recommendation, the plaintiff has made no reply.

## II. Issues Presented

**A. The Complaint**

In the complaint, the plaintiff alleges that while he was confined at FCI Gilmer, he was discriminated against and subjected to cruel and unusual punishment in violation of the 8th Amendment of the Constitution. Specifically, he alleges that on April 5, 2005, he was placed in the Special Housing Unit ("SHU") under no contact status. He alleges that he was the only inmate on the range for a period of three months except for brief periods when other inmates were housed in nearby cells due to overcrowding . He further alleges that he had no contact with medical staff or his unit team during this time, and was not permitted to shop for commissary items. He alleges that he was not able to make legal

or personal phone calls, was not permitted to use the law library, and was not permitted general recreation. He alleges that the SHU staff deactivated the distress alarm in his cell so that he could not seek attention, and then did not take care of his needs or otherwise approach his cell. He also alleges that one particular cell in which he was housed was filthy and contaminated, and that he was not provided any cleaning supplies for the cell. The plaintiff alleges that when he was transferred to the SHU his property was lost or stolen because defendant Bruce McClung, a correctional officer, failed or refused to properly secure the property.

The plaintiff further alleges that defendant Martin Garza, who was then a correctional officer at FCI Gilmer[1], threatened him repeatedly to "not talk" to anyone regarding an investigation of defendant Garza's girlfriend, FCI Gilmore cook foreman, Christina Akers ("Ms. Akers").[2] The plaintiff also alleges that on or about June 1, 2005 or June 8, 2005, the defendant Timothy Tompkins, another correctional officer at FCI Gilmore, escorted him to the SHU property room and placed him inside with defendant Garza. The plaintiff alleges that while he was handcuffed, defendant Garza physically assaulted him by punching and choking him. The plaintiff alleges that this assault occurred because of "rumors" that the plaintiff was having a relationship with Ms. Akers. The plaintiff alleges that all of the defendants knew that he would be harmed, or that he faced a great risk of harm by being placed in the same area and under the supervision of defendant Garza, who frequently worked in the SHU.

---

[1] Defendant Garza is now employed with the Department of Homeland Security. (Doc. 78-26).

[2] At the time of this alleged incident, Ms. Akers was being investigated for introducing or attempting to introduce contraband into the institution for the plaintiff. Ms. Akers was later prosecuted and convicted of violating 18 U.S.C. §§ 1791(1)(1), 1791(d)(1)(B), 2 and 21 U.S.C. §§ 846 and 841(b)(1)(D), attempting to provide a prohibited object to a federal inmate and conspiracy to possess with intent to distribute marijuana. See 1:05cr-0065 (N.D.W.Va.).

In his amended complaint, filed in May 10, 2007, the plaintiff alleges that defendant Dane Heady, unit manager at FCI Gilmer, violated his rights by denying him legal calls. Moreover, the plaintiff alleges that defendant Heady denied him the right to make legal calls, even though the same had been approved by the warden at FCI Gilmore.

As relief for these alleged constitutional violations, the plaintiff seeks a declaratory judgment, compensatory damages and punitive damages.

**B. The Defendant's Answer**

For their answer, the defendants filed a Motion to Dismiss or, on the alternative, Motion for Summary Judgment. In support of their motion, the defendants allege that the plaintiff failed to exhaust his administrative remedies on any of the issues raised in his <u>Bivens</u> complaint.[3] In addition, to the extent that the plaintiff is seeking to assert a FTCA for his allegedly lost or stolen property, the defendants assert that the United States is immune from suits for unlawful detention of property.

### III. Standard of Review

**A. Motion to Dismiss**

In ruling on a motion to dismiss the Court must accept as true all well-pleaded factual allegations. <u>Walker v. True</u>, 399 F.3d 315 (4th Cir. 2005). Furthermore, dismissal for failure to state a claim is properly granted where, assuming the facts alleged in the complaint to be true, and construing the allegations in the light most favorable to the plaintiff, it is clear, as a matter of law, that no relief could be granted under any set of facts that could be proved consistent with the allegations

---

[3]In their brief in support of their motion, the defendants asserts numerous other arguments why the plaintiff's <u>Bivens</u> complaint fails to state a claim upon which relief can be granted. However, because exhaustion of administrative remedies is mandatory, and the exhibits and/or affidavits submitted by the defendants clearly establish that the plaintiff failed to exhaust those remedies, the undersigned has not addressed the other defenses raised.

of the complaint. <u>Hishon v. King & Spaulding</u>, 467 U.S. 69, 73 (1984); <u>Conley v. Gibson</u>, 355 U.S. 41, 4506 (1957).

**B. <u>Summary Judgment</u>**

Pursuant to Rule 56c of the Federal Rules of Civil Procedure, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." In applying the standard for summary judgment, the Court must review all the evidence "in the light most favorable to the nonmoving party." <u>Celotex Corp. V. Catrett</u>, 477 U.S. 317, 322-23 (1986). The court must avoid weighing the evidence or determining the truth and limit its inquiry solely to a determination of whether genuine issues of triable fact exist. <u>Anderson v. liberty lobby, Inc.</u>, 477 U.S. 242, 248 *1986).

In <u>Celotex</u>, the Supreme Court held that the moving party bears the initial burden of informing the Court of the basis for the motion and of establishing the nonexistence of genuine issues of fact. <u>Celotex</u> at 323. Once "the moving party has carried its burden under Rule 56, the opponent must do more than simply show that there is some metaphysical doubt as to material facts." <u>Matsushita Electric Industrial Co. V. Zenith Radio Corp.</u>, 475 U.S. 574, 586 (1986). The nonmoving party must present specific facts showing the existence of a genuine issue for trial. <u>Id</u>. This means that the "party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials of [the] pleading, but...must set forth specific facts showing that there is a genuine issue for trial." <u>Anderson</u> at 256. The "mere existence of a scintilla of evidence" favoring the nonmoving party will not prevent the entry of summary judgment. <u>Id.</u> at 248. To withstand such a motion, the nonmoving party must offer evidence from which a "fair-minded jury could return a verdict for the [party]." <u>Id</u>. "If the evidence is merely colorable, or is not significantly probative,

5

summary judgment may be granted." Felty v. Graves-Humphreys Co., 818 F.2d 1126, 1128 (4th Cir. 1987). Such evidence must consist of facts which are material, meaning that they create fair doubt rather than encourage mere speculation. Anderson at 248. Summary judgment is proper only "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." Matsushita at 587 (citation omitted).

## IV. Analysis

### A. Exhaustion of Administrative Remedies

Under the Prison Litigation Reform Act (PLRA), a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983, or any other federal law, must first exhaust all available administrative remedies. 42 U.S.C. § 1997(e)(a). Exhaustion as provided in § 1997(e)(a) is mandatory. Booth v. Churner, 532 U.S. 731, 741 (2001). A Bivens action, like an action under 42 U.S.C. § 1983, is subject to the exhaustion of administrative remedies. Porter v. Nussle, 534 U.S. 516, 524 (2002). The exhaustion of administrative remedies "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes,"[4] and is required even when the relief sought is not available. Booth at 741. Because exhaustion is a prerequisite to suit, all available administrative remedies must be exhausted *prior to* filing a complaint in federal court. See Porter, 534 U.S. at 524 (citing Booth, 532 U.S. at 741) (emphasis added).

The Bureau of Prisons provides a four-step administrative process beginning with attempted informal resolution with prison staff (BP-8). If the prisoner achieves no satisfaction informally, he must file a written complaint to the warden (BP-9), within 20 calendar days of the date of the occurrence on which the complaint is based. If an inmate is not satisfied with the warden's

---

[4] Id.

response, he may appeal to the regional director of the BOP (BP-10) within 20 days of the warden's response. Finally, if the prisoner has received no satisfaction, he may appeal to the Office of General Counsel (BP-11) within 30 days of the date the Regional Director signed the response. An inmate is not deemed to have exhausted his administrative remedies until he has filed his complaint at all levels. 28 C.F.R.§ 542.10-542.15; Gibbs v. Bureau of Prison Office, FCI, 986 F.Supp. 941, 943 (D.Md. 1997).

In response to the undersigned's order that he demonstrate exhaustion of his administrative remedies with respect to the claims alleged in this matter, the plaintiff submitted a statement in which he claimed that upon his transfer to FCC Petersburg, Virginia, he immediately began the administrative process. He further stated that he filed his administrative remedies at all levels and listed the identifying fourteen file numbers assigned to each of the individual remedies relevant to this case and gave the dates of the final BP-11 response to each. However, upon review of the fourteen administrative remedies filed by the plaintiff regarding the claims raised in his complaint, it is clear that the claims were rejected as being untimely filed.

As previously noted, the deadline for completion of informal resolution and submission of a formal written Administrative Remedy Request is 20 calendar days following the date on which the basis for the request occurred. See 28 C.F.R. § 542.14(a). The plaintiff's claims in this complaint relate to his incarceration at FCI Gilmer. He was incarcerated at that institution from June 24, 2003 to July 20, 2005. However, he did not initiate any administrative remedies while at FCI Gilmer. Moreover, although he was transferred on July 20, 2005, he did not initiate his first BP-9 regarding the allegation raised herein until April 21, 2006, nine months after he left Gilmer.[5] (Doc. 78-3). Therefore, although

---

[5]Ten of the administrative remedies identified by the plaintiff were formally initiated on April 21, 2006, one was initiated on April 24, 2006, two were initiated on July 5, 2006, and one was

7

the plaintiff did file fourteen administrative remedies at each level[6], all were properly denied as untimely, and the plaintiff has failed to properly exhaust his administrative remedies with respect to the claims raised in his complaint.

Furthermore, the plaintiff's implied allegation that he was prevented from filing his administrative remedies while at FCI Gilmer is clearly refuted by the defendants' affidavits. Specifically, it would appear that the plaintiff alleges that he was prevented from exhausting his administrative remedies at FCI Gilmer because he had no access to his Unit Team, and consequently, no access to the administrative remedy forms. While it is clear that the plaintiff had limited staff contact while he was in the SHU, he did have access to his Unit Manager, defendant Heady. (Doc. 78-21, p.1). Not only did the plaintiff have access to defendant Heady once or twice per week, defendant Heady has supplied an affidavit in which he states that he specifically recalls giving the plaintiff administrative remedy forms during the time he was housed in the SHU. Because the plaintiff failed to respond to the Motion to Dismiss, or in the alternative, for Summary Judgment, he has made no showing that there is a genuine issue for trial.[7] Accordingly, the plaintiff's complaint should be dismissed for failure to properly exhaust his administrative remedies. Furthermore, because the plaintiff cannot now exhaust those remedies, the dismissal should be with prejudice.

---

initiated on July 11, 2006.

[6]The undersigned notes that the plaintiff initiated 10 of his administrative remedies at the regional level, refiled at the institutional level, and then proceeded back to the regional level. However, even if the plaintiff were to be excused from initiating at the wrong level, he still did not do so until more than nine months after he left FCI Gilmer.

[7]Rule 56(e) of the Federal Rules of Civil Procedure provides as follows: "When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleadings, but the adverse party's response, by affidavits or otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial."

8

**B. Federal Tort Claim Act**

As the undersigned noted in the procedural history of this case, the plaintiff had notified the court that his original letter, received on December 1, 2006, was intended as a motion for an extension of time within which to file his FTCA complaint. Although the plaintiff apparently abandoned his FTCA claim, he would not be entitled to relief from this court for his claims of lost property even if he wished to pursue the same.

The Federal Tort Claims Act (FTCA) is a comprehensive legislative scheme through which the United States has waived its sovereign immunity to allow civil suits for actions arising out of negligent acts of agents of the United States. The United States cannot be sued in a tort action unless it is clear that Congress has waived the government's sovereign immunity and authorized suit under the FTCA. Dalehite v. United States, 346 U.S. 15, 30-31 (1953). The provisions of the FTCA are found in Title 28 of the United States Code. 28 U.S.C. § 1346(b), § 1402(b), § 2401(b), and §§ 2671-2680.

Despite this limited waiver, FTCA § 2680(c) expressly preserves sovereign immunity for "[a]ny claim arising in respect of...the detention of any goods, merchandise, or other property by any officer or customs or excise **or any other law enforcement officer**." 28 U.S.C. § 2680(a) (2006)(emphasis added). In 2006, the United States Court of Appeals for the Fourth Circuit joined a minority of courts in holding that the phrase "any other law enforcement officer" does not confer sovereign immunity upon Bureau correctional officers moving inmates' property because such officers are not acting in a tax or customs capacity. Andres v. United States, 441 F.3d 220, 227 (4th Cir. 2006).

However, since then, the United States Supreme Court has determined that this exception does preserve sovereign immunity for torts committed by all federal law enforcement officers

9

specifically including officers employed by the Federal Bureau of Prisons. <u>Ali v. Fed. Bureau of Prisons</u>, 128 S.Ct. 831 (2008).[8] Accordingly, this Court would not have jurisdiction over any attempt by the plaintiff to pursue a FTCA for any of his property which was allegedly lost or stolen due to the actions or inactions of defendant McClung when he was transferred to the SHU.

## V.  RECOMMENDATION

In consideration of the foregoing, it is the undersigned's recommendation that the defendants' Motion to Dismiss or in the alternative, Motion for Summary Judgment (Doc. 77) be **GRANTED** and the plaintiff's complaint be **DISMISSED WITH PREJUDICE.**

Within ten (10) days after being served with a copy of this recommendation, any party may file with the Clerk of the Court written objections identifying the portions of the recommendation to which objections are made, and the basis for such objections. A copy of such objections should also be submitted to the Honorable Frederick P. Stamp, Jr., United States District Judge. Failure to timely file objections to this recommendation will result in waiver of the right to appeal from a judgment of this Court based upon such Recommendation. 28 U.S.C. § 636(b)(1); <u>Thomas v. Arn</u>, 474 U.S. 140 (1985); <u>Wright v. Collins</u>, 766 F.2d 841 (4th Cir. 1985); <u>United States v. Schronce</u>, 727 F.2d 91 (4th Cir. 1984), <u>cert. denied</u>, 467 U.S. 1208 (1984).

The Clerk of the Court is directed to mail a copy of of this Report and Recommendation to the *pro se* plaintiff by certified mail, return receipt requested, to his last known address as reflected on the docket sheet. The Clerk is further directed to provide a copy of this Report and Recommendation to any counsel of record as provided in the Administrative Procedures for Electronic Case Filing in the

---

[8]In <u>Ali</u>, the petitioner, a federal prisoner, was transferred from the USP in Atlanta, Georgia to the USP Big Sandy in Inez, Kentucky. Before being transferred, he left two duffle bags containing his personal property in the Atlanta prison's Receiving and Discharge Unit to be inventoried, packaged, and shipped to USP Big Sandy. When his bags arrived, several items were missing, and he pursued a claim under the FTCA.

10

United States District Court for the Northern District of West Virginia.

Dated: March 6, 2009

                                              /s/ James E. Seibert
                                              JAMES E. SEIBERT
                                              UNITED STATES MAGISTRATE JUDGE